**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 96-50639
_____

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

versus

LATARSHA HUNT,

                    Defendant - Appellant.

Appeal from the United States District Court
for the Western District of Texas

November 17, 1997

Before WISDOM, JOLLY, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Latarsha Hunt appeals her conviction for possession of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Finding insufficient evidence to support the verdict, we reverse, vacate the sentence, and remand for sentencing on the lesser included offense of simple possession.

I

A confidential informant told police that marijuana was being sold out of 832 Arthur Walk, which police identified as property leased to Hunt. Executing a search warrant on those premises, police officers discovered a brown paper bag containing marijuana

on a coffee table in the living room along with loose tobacco and cigar labels on the floor. In addition, they found a loaded handgun under the couch. In Hunt's bedroom, they discovered 7.998 grams of cocaine base (or "crack") and a razor blade on a plate on the top of a dresser. The cocaine was broken into one large rock and several smaller pieces. Hunt, Dashanta Burton, who is a friend of Hunt's, and an unidentified male juvenile were present when the police entered the house. Hunt was standing near the front door when police entered, and, according to the testimony of the officers, did not appear to be expecting the police.

Detective Ruben Rodriguez testified that the cocaine was worth about $200, an amount that could be doubled depending on how it was cut, and that it was a distributable amount. Furthermore, he stated that each of the smaller rocks would be "a lot of crack for a crack head" and that the rocks are available in sizes smaller than that size. Brian Cho, a forensic drug analyst, stated that the amount of cocaine base he usually receives for testing is around 100 to 200 mg per submission, usually in the form of one small rock.

Detective Rodriguez also stated, however, that a cocaine base addict may smoke close to $500 worth in one day. He explained that although a junkie who had a rock as big as the largest one "would be in heaven," it would produce only a three-second high. When questioned about the razor blade that was found with the cocaine, he testified that a razor blade is necessary to cut the cocaine base, either for distribution or, as he conceded on cross-

examination, for personal use (i.e., to fit in a smoking device).

When questioned about drug paraphernalia, Detective Rodriguez testified that crack users will smoke from homemade crack pipes, which can be made from objects such as broken car antennas, aluminum cans, and aluminum foil. The officers did not find any smoking devices, such as a smoke pipe, and, according to Detective Rodriguez, this indicated that no crack cocaine smokers were present. Furthermore, in his opinion, the tobacco and cigar wrappings they found were evidence of "blunts" being sold out of Hunt's house. He explained that blunts are made by taking the tobacco out of cigars and replacing it with marijuana and that "primos" are made by adding crack cocaine to the marijuana. He stated that in the area of town where Hunt's house was located, marijuana and crack are usually sold hand in hand, "like a little drug store." On recross, however, he stated that "primos" are one way that cocaine users smoke cocaine.

Hunt testified that she arrived at home just before the police officers and that she had not yet entered her bedroom, where the police officers found the cocaine. She admitted that she used marijuana, but claimed she did not "indulge" in crack cocaine. She said she knew the marijuana was in the house, but denied knowledge of the cocaine being there. She also denied allegations that she had ever sold drugs. She said she had given a key to the house to Burton, who was also living in the house, and that Burton had obtained the marijuana for a "get-together" they were going to have with a few friends that night. She also admitted she owned the

gun, but denied owning the tobacco. Wendy Wilson, Hunt's neighbor and friend, testified that she had never seen Hunt use or deal crack cocaine.

Hunt was indicted under § 841(a)(1) for possession of cocaine base with intent to distribute. The first trial resulted in a hung jury. During the first and second trials, neither the government nor the defendant requested that the lesser included offense of possession be submitted to the jury. Moreover, neither the government nor Hunt challenged the instructions at trial or on appeal. In the second trial, the jury returned a verdict of guilty.

## II

On appeal, Hunt contends that the evidence is insufficient to support the jury's verdict regarding the element of intent to distribute. She does not contend that the evidence was insufficient to support possession. In reviewing a challenge to the sufficiency of the evidence in a criminal case, we will affirm a conviction if a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). We consider the evidence, all reasonable inferences that may be drawn from that evidence, and all credibility determinations in the light most favorable to the verdict. *See United States v. Salazar*, 66 F.3d 723, 728 (5th Cir. 1995). The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with

every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence. *See id*. If, however, the evidence gives equal or nearly equal circumstantial support to a theory of guilt and to a theory of innocence, we will reverse the conviction, as under these circumstances a reasonable jury must necessarily entertain a reasonable doubt. *See United States v. Sanchez*, 961 F.2d 1169, 1173 (5th Cir. 1992).

To establish a violation of 21 U.S.C. § 841(a)(1), the government must prove the knowing possession of a controlled substance with the intent to distribute. *See United States v. Skipper*, 74 F.3d 608, 611 (5th Cir. 1996). The elements of the offense may be proved either by direct or circumstantial evidence. *See id.*

Intent to distribute may be inferred solely from the possession of an amount of controlled substance too large to be used by the possessor alone. *See United States v. Prieto-Tejas*, 779 F.2d 1098, 1101 (5th Cir. 1986). On the other hand, a quantity that is consistent with personal use does not raise such an inference in the absence of other evidence. *See Skipper*, 74 F.3d at 611 (holding as a matter of law that 2.89 grams of crack cocaine alone was insufficient to prove intent, despite testimony indicating that amount could suggest drug dealing, because it was "not clearly inconsistent with personal use"); *see also Turner v. United States*, 396 U.S. 398, 423, 90 S. Ct. 642, 656, 24 L.Ed.2d 610 (1970) (holding that a small quantity of cocaine, which could

-5-

be for the defendant's personal use as well as for sale, does not support an inference of distribution).

Hunt contends that the 7.998 grams of crack cocaine that the police discovered in her house is insufficient as a matter of law to infer intent, and we agree. Although the government introduced testimony that this amount is a distributable amount and that the individual rocks may be larger than those that Detective Rodriguez believes are usually smoked or that Cho, the forensic analyst, usually tests, the testimony also indicated, as in *Skipper*, that this amount was also consistent with personal use. In particular, Detective Rodriguez testified that a crack cocaine user may smoke, in one day alone, close to $500 worth, an amount that exceeds even the highest value he assigned to the cocaine found in Hunt's house. Furthermore, at oral argument, the government conceded that "the amount alone, by itself, is not sufficient" to support an inference of intent to distribute.[1]

---

[1] In considering the quantity of crack cocaine found in Hunt's house, we note that, in a few cases, other circuit courts rested their decisions that the evidence was sufficient to support an inference of intent in large part on quantities comparable to this amount. In *United States v. Lamarr*, 75 F.3d 964, 973 (4th Cir. 1996), the court quoted a letter to the editor of the Washington Post (regarding sentencing), which stated that "'[f]ive grams of crack cocaine is the equivalent of 50 street doses'" and that "'anybody holding that much crack is dealing.'" The court concluded that the 5.72 grams the defendant possessed was roughly the amount a strong user would use in two months and held that, combined with testimony that the defendant was dealing, the evidence was sufficient to infer intent. *See also United States v. Haney*, 23 F.3d 1413 (8th Cir. 1994)(emphasizing the testimony of a criminologist that if an addict ingested 6.57 grams of crack in one or two days he would probably die; but also relying on confidential informant's information that defendant would be selling crack in exchange for food stamps, the $371 cash and $97 in food stamps found on defendant, and the fact that cocaine was cut into $20

We must therefore examine the other evidence to determine whether it, in conjunction with the quantity of cocaine found, suffices to establish the requisite intent to distribute. *See United States v. Munoz*, 957 F.2d 171, 174 (5th Cir. 1992) (noting that even a small quantity of cocaine is sufficient to infer intent when augmented by the presence of evidence such as distribution paraphernalia or large quantities of cash). As with the quantity of drugs, however, "[p]araphernalia that could be consistent with personal use does not provide a sound basis for inferring intent to distribute." *Skipper*, 74 F.3d at 611. As evidence of intent to distribute, the government points to the razor blade, the absence of smoking pipes or other such instruments, the evidence of blunts, the gun, and Hunt's testimony. In *Skipper*, the government similarly argued that a straight-edged razor and the absence of smoking paraphernalia suggested the intent to distribute. *Id*. We held that, even viewed in the light most favorable to the government, the evidence was insufficient to prove intent beyond a reasonable doubt. The same conclusion is warranted here. Detective Rodriguez testified that although a razor blade is needed

_____

pieces). Here, however, the only testimony the jury heard regarding the quantity of drugs was that a crack cocaine user can consume in one day, a value of crack greater than that found in Hunt's house and that the size of the individual rocks may be larger than those usually smoked by crack users or those tested by Brian Cho. Furthermore, we note again the government's concession at oral argument that this amount, by itself, is not sufficient to support an inference of intent. Therefore, although we recognize the import of the quantity in determining the intent to distribute controlled substances, we conclude that the quantity of cocaine base at issue here, as evaluated by the testimony presented, does not support an inference of intent to distribute.

-7-

to cut crack cocaine for distribution, it is also needed to cut the cocaine for personal use. Furthermore, even though Rodriguez testified that the evidence of blunts indicated drug sales, he also said that the evidence indicated use, namely, the smoking of cocaine in the form of primos. Because this evidence is also consistent with personal use, we do not believe it provides a sound basis for inferring that Hunt intended to distribute the cocaine.

The government also points to the gun found under her couch as evidence of Hunt's intent to distribute. We have often recognized that guns are tools of the trade in the drug business. *See United States v. Martinez*, 808 F.2d 1050, 1057 (5th Cir. 1987). In *United States v. Lucien*, 61 F.3d 366, 375 (5th Cir. 1995),[2] the government argued that three guns that were found in the defendant's apartment were evidence that he was distributing cocaine base. In response, we noted that "[a]lthough we do not discount the prevalence of guns in drug trafficking, we do not place undue weight on the presence of the guns in this case because [the defendants] could have untold reasons, nefarious and otherwise, for keeping guns in the apartment." *Id*. at 375-76; *see also United States v. Gibbs*, 904 F.2d 52, 59 (D.C. Cir. 1990) (stating that "[w]hile the presence of

---

[2] In *Lucien*, the defendant was convicted of possession with intent to distribute cocaine base in violation of § 841(a)(1). Upon executing a search warrant, the police found 16.48 grams of crack cocaine, three weapons, over $1200 cash, and a plastic bag with several aluminum foil packets. We found that the evidence was sufficient to support Lucien's conviction under § 841(a)(1). We reversed the conviction, however, and remanded the case for retrial, holding that because a reasonable jury could convict Lucien of possession but acquit him of possession with intent to distribute, the district court had erred in refusing to give the requested lesser included offense instruction.

weapons may be a factor in considering whether the defendants intended to distribute the cocaine, the mere presence of weapons is not, in and of itself, dispositive of such intent"). The reasoning in *Lucien* applies with equal force to this case. Hunt's gun was found in her residence, under a couch, and not with the cocaine. Furthermore, Hunt made no move toward the gun when the police entered, and she admitted when asked that she did have a gun in the house. This evidence can be contrasted with cases in which a weapon was found in a more incriminating context. *See, e.g.*, *United States v. Harrison*, 55 F.3d 163, 165 (5th Cir.) (noting that loaded .22 caliber pistol and ammunition were found next to 49.32 grams of cocaine base in dresser drawer), *cert. denied*, ___ U.S. ___, 116 S. Ct. 324, 133 L.Ed.2d 225 (1995); *United States v. Perez*, 648 F.2d 219, 220-21 (5th Cir. Unit B June 1981) (noting that when defendant noticed police observing him feeding bales of marijuana on conveyor belt to boat, he ran into house and was apprehended as he reached toward a shelf on which there were two loaded weapons). Unconnected with any such circumstances, however, the gun is no more probative of distribution of drugs than of other, non-nefarious purposes for which one may keep a gun. We therefore cannot affirm Hunt's conviction based on the presence of the gun.

The government also argues that the jury could have rejected Hunt's testimony that she had no knowledge of the cocaine and that Hunt's denial of use of cocaine necessitates a conclusion that the cocaine was kept on the premises for distribution. On appeal,

however, Hunt does not challenge the jury's finding that she possessed the cocaine. Furthermore, although denial of personal consumption may be a factor in inferring intent to distribute in certain circumstances, *see Munoz*, 957 F.2d at 174, we have stated that a defendant's "denial of guilt itself should not be permitted to become evidence of guilt." *United States v. Sutherland*, 428 F.2d 1152, 1157 (5th Cir. 1970) (distinguishing "a mere denial" of guilt from an affirmative assertion of an alibi or other explanation for the behavior). Accordingly, we reject the government's argument that Hunt's denial of use leads to the inference that she intended to distribute the crack.

When we have concluded that the evidence presented at trial was sufficient to support an inference of intent to distribute, we have pointed to evidence that is not as equally probative of possession as of distribution. *See, e.g.*, *Lucien*, 61 F.3d at 376 (over $1200 cash, three weapons, and a plastic bag with several aluminum foil packets); *United States v. Pigrum*, 922 F.2d 249, 251 (5th Cir. 1991) (two sets of scales, coffee cup containing a test tube, cutting agent); *United States v. Onick,* 889 F.2d 1425, 1430-31 (5th 1989) (drug paraphernalia, particularly 4,063 empty gelcaps, and testimony that dealers package drugs in these gelcaps for street distribution); *United States v. Prieto-Tejas*, 779 F.2d 1098, 1101 (5th Cir. 1986) (value of cocaine between $2,200 and $9,000). We do not, however, see any evidence in this case, viewed individually or collectively, that is more probative of distribution than of possession. We therefore hold that a

reasonable jury could not conclude beyond a reasonable doubt that Hunt intended to distribute the cocaine.  We accordingly reverse Hunt's conviction for possession with intent to distribute.

III

The government asked us to remand for entry of judgment and for sentencing on the lesser included offense of simple possession if we found the evidence insufficient to support the element of intent to distribute.  In her brief, Hunt requested a judgment of acquittal if we found the evidence insufficient to support the conviction for possession with intent to distribute.  At oral argument, however, defense counsel conceded that we should direct entry of judgment on the lesser included offense of misdemeanor possession under 21 U.S.C. § 844(a).

In certain limited circumstances, we may exercise our power under 28 U.S.C. § 2106 and reduce a conviction to a lesser included offense.[3]  *See Skipper*, 74 F.3d at 612 (reducing defendant's § 841(a)(1) conviction to a § 844(a) conviction upon finding that the evidence was insufficient as a matter of law to support the element of intent to distribute); *see also Rutledge v. United States*, ___ U.S. ___, 116 S. Ct. 1241, 1250, 134 L.Ed.2d 419 (1996) (stating that "federal appellate courts appear to have uniformly concluded that they may direct the entry of judgment for a lesser included

---

[3]     Section 2106 provides as follows:  "The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances."  28 U.S.C. § 2106.

offense when a conviction for a greater offense is reversed on grounds that affect only the greater offense" and that it "has noted the use of such a practice with approval"). Those circumstances have been outlined as follows: "It must be clear (1) that the evidence adduced at trial fails to support one or more elements of the crime of which appellant was convicted, (2) that such evidence sufficiently sustains all the elements of another offense, (3) that the latter is a lesser included offense of the former, and (4) that no undue prejudice will result to the accused." *Allison v. United States*, 409 F.2d 445, 451 (D.C. Cir. 1969) (cited with approval in *Rutledge*, 116 S. Ct. at 1250 n.15; *see also United States v. Smith*, 13 F.3d 380, 383 (10th Cir. 1993) (suggesting that the referred-to prejudice generally arises when the defenses presented to the jury would have differed).

In light of our reversal of Hunt's conviction, we find the first prong of the *Allison* test satisfied. We further find that the third prong is satisfied by our decision in *United States v. Deisch*, in which we held that simple possession under § 844(a) is a lesser included offense of § 841(a)(1). *See United States v. Deisch*, 20 F.3d 139, 152 (5th Cir. 1994) (holding that even if the indictment alleges that the controlled substance is cocaine base, felony possession, which requires that the substance be cocaine base, cannot be a lesser included offense of § 841(a)(1), but that simple possession may be a lesser included offense of § 841(a)(1)).

With regard to the second prong, we note that Hunt does not challenge the sufficiency of the evidence regarding possession and

that her sole argument on appeal is that the element of intent to distribute is not sufficiently supported by the evidence. In *Skipper*, we stated that "[b]ecause the jury necessarily found all of the elements of simple possession in rendering its verdict, we are empowered under 28 U.S.C. § 2106 to reduce Skipper's Section 841 conviction to a Section 844 conviction." *Skipper*, 74 F.3d at 612. We find the same to be true in this case: the jury necessarily found all of the elements of simple possession in rendering its verdict.

Hunt does not argue that a reduction to simple possession would result in undue prejudice to her. In fact, as noted above, at oral argument, defense counsel agreed that such a result was warranted under this circuit's case law.[4] We note again that Hunt has conceded the element of possession on appeal, challenging only the element of intent. We therefore find that reducing Hunt's conviction to possession will occasion her no undue prejudice. *See Smith*, 13 F.3d at 383 (remanding for resentencing on § 841(a)(1), a lesser included offense of § 860, because "the only prejudice Mr. Smith suggests is that he will be convicted of a proven lesser included offense" and that "[t]his is not the undue prejudice contemplated by the test set forth in *Allison*").

---

[4] At oral argument, defense counsel stated that *Deisch* and *United States v. Fitzgerald* compel us to reduce the conviction to possession. *See Deisch*, 20 F.3d at 152 (reversing conviction for felony possession and remanding for sentencing on misdemeanor possession, both under § 844(a)); *United States v. Fitzgerald*, 89 F.3d 218 (5th Cir.) (affirming conviction of felony possession under § 844(a)), *cert. denied*, ___ U.S. ___, 117 S. Ct. 446, 136 L.Ed.2d 342 (1996). The government cited *Skipper* for the same proposition.

We pause, however, to question whether we can direct the entry of judgment on a lesser included offense when the district court did not instruct the jury that it could find the defendant guilty of that lesser included offense.  Although *Skipper* does not mention whether the jury was instructed that it could find the defendant guilty of the lesser included offense, it does not explicitly require that the jury be so instructed.[5]  In *United States v. Mitcheltree*, the Tenth Circuit noted that cases in which courts had remanded for entry of judgment on the lesser included offense involved either an instruction or some type of concession.  *See United States v. Mitcheltree*, 940 F.2d 1329, 1352 & n.17 (10th Cir. 1991) (declining to enter misdemeanor convictions on two counts and instead remanding for new trial because no lesser included offense

---

[5]    Although many cases disclose that the jury was instructed on the lesser included offense, *see, e.g.*, *United States v. Boissoneault*, 926 F.2d 230, 235 (2d Cir. 1991), it appears to be a separate requirement only in the Ninth Circuit. *See, e.g.*, *United States v. Dinkine*, 17 F.3d 1192, 1198 (9th Cir. 1994).  Other circuit courts have remanded on the lesser included offense even when the jury was not instructed on it, generally under conditions which did not demonstrate any prejudice to the defendant. *See, e.g.*, *United States v. LaMartina*, 584 F.2d 764, 766-67 (6th Cir. 1978) (holding that although district court erred in refusing to instruct on lesser included offense, sentence should be vacated and case remanded for sentencing on lesser included offense as there was sufficient evidence to support the lesser but not the greater offense); *United States v. Cobb*, 558 F.2d 486, 489 (8th Cir. 1977) (remanding for resentencing on lesser included offense because jury must necessarily have found each element of lesser included offense, even though defendant declined district court's offer of an instruction on the lesser included offense); *United States v. Melton*, 491 F.2d 45, 57-58 (D.C. Cir. 1973) (remanding for sentencing on lesser included offense because jury necessarily found the facts required for conviction of the lesser included offense and there was no question as to the sufficiency of that evidence, thereby amending prior opinion, in which it had entered judgment of acquittal because the government had chosen at trial to seek conviction only on the greater offense).

-14-

instructions were given and neither party made any concessions on the issues in dispute). Applying *Mitcheltree*'s approach to this case, we find that the lack of instruction on the lesser included offense was not unduly prejudicial to Hunt, as she has conceded the element of possession. Furthermore, we note that Hunt did not challenge our power to reduce her conviction despite the lack of instruction. We therefore remand the case with instructions to enter a judgment of guilt of simple possession under 21 U.S.C. § 844(a) and to sentence Hunt for that offense.

For the foregoing reasons, Hunt's conviction is REVERSED, the sentence is VACATED, and the cause is REMANDED with instructions.