**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**March 2, 2007**

**Charles R. Fulbruge III**
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 05-50940

UNITED STATES OF AMERICA

Plaintiff - Appellee

VERSUS

BRYAN KEITH NEALY

Defendant - Appellant

Appeal from the United States District Court
For the Western District of Texas, Waco Division
W-05-CR-008

Before DAVIS and STEWART, Circuit Judges, and GODBEY[*], District Judge.

PER CURIAM:[**]

Bryan Keith Nealy appeals his conviction for possession of more than five grams of cocaine base with intent to distribute within 1000 feet of a school in violation of 21 U.S.C. §§ 841(a)(1) and 860(a). Finding sufficient evidence to support the jury's

_____

[*]District Judge of the Northern District of Texas, sitting by designation.

[**]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

verdict, we affirm.

On August 12, 2004, Officer Rankin of the Temple Police Department, received information concerning the Appellant, Bryan Keith Nealy ("Nealy"), who was wanted on an outstanding warrant. According to the information, Nealy, an African American male, was at the Wayman Manor Apartments in Temple, Texas, wearing a red and white jersey type shirt and dark shorts. Officer Rankin gathered several other officers to help arrest Nealy. When Officer Rankin drove up to the parking lot of the apartment complex, he saw Nealy standing near an apartment building. Officer Rankin contacted Officer Bragg and advised him that Officer Bragg was walking toward Nealy's location.

When Nealy spotted Officer Bragg, he began running. Nealy ran through the grounds of an elementary school, through yards in a nearby neighborhood by jumping some fences, and finally came over a fence into an open field. Another officer, Officer Schuler, was then able to subdue Nealy. Other officers, including Officer Rankin, arrived shortly after Nealy's apprehension.

Officer Rankin conducted a pat down search of Nealy. During that search, Officer Rankin found a white pill bottle. Officer Rankin field tested the substance in the white pill bottle, which tested positive for cocaine base. The substance was then sent to the crime lab for analysis and was confirmed to be a substance

containing cocaine base, weighing 1.87 grams.  Officer Rankin did not find any weapons, money, or drug paraphernalia on Nealy's person.

Officer Rankin also found a piece of paper in Nealy's pocket. On one side of the paper were descriptions of cars, such as, "Green Grand AM, 2002 Grand AM, tinted windows, black, a white Dodge, gold SUV, Suburban . . ."  In addition, there were descriptions of persons next to the vehicle descriptions: "white chick, white dude, black chick, white lady, male, white boy . . ."  On the other side of the paper, there appeared to be a ledger, which had numbers and references to "zone."  Officer Rankin and Officer Kallus testified that they thought the piece of paper related to drug transactions.

In addition to the white pill bottle found on Nealy's person, an orange pill bottle found in an elderly man's backyard (in the neighborhood through which Nealy was running) was attributed to Nealy.  Vollie Meyers ("Meyers") witnessed an African American man throw some items on the ground in his backyard.  Meyers then went to his backyard where he found the items.

Officer Kallus spoke with Meyers about what he saw in his backyard and secured the two plastic baggies, cigar, and orange pill bottle found in Meyers's backyard.  The two plastic baggies contained marijuana.  The substance from the orange pill bottle was submitted to the lab for testing and tested positive for cocaine base.  The cocaine base weighed 3.14 grams, resulting in a total of 5.01 grams of cocaine base attributed to Nealy.

3

Nealy was indicted for intent to distribute five grams of cocaine base within 1000 feet of a school, in violation of 21 U.S.C. §§ 841(a)(1) and 860(a). Nealy pleaded not guilty and was tried and convicted before a jury. Nealy then filed a Rule 29 motion for judgment of acquittal stating that the evidence was insufficient to sustain the conviction against him. The district court denied his motion. This appeal followed.

## II.

On appeal, Nealy argues that the evidence is insufficient to support both possession of more than five grams of cocaine base and intent to distribute. We review *de novo* the denial of a Rule 29 motion for judgment of acquittal, applying the same standard as in a general review of the sufficiency of the evidence.[1] In reviewing the challenge to the sufficiency of the evidence in a criminal case, we will affirm a conviction if a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt.[2] We view all evidence in the light most favorable to the prosecution and the verdict, accepting all credibility choices and reasonable inferences made by the jury.[3] In conducting this review, we do not question the veracity

---

[1]United States v. Burns, 162 F.3d 840, 847 (5th Cir. 1998).

[2]See Jackson v. Virginia, 443 U.S. 307, 319 (1979).

[3]United States v. Anderson, 174 F.3d 515, 522 (5th Cir. 1999).

4

of the government's evidence.[4] The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence.[5] If, however, the evidence gives equal or nearly equal circumstantial support to a theory of guilt and to a theory of innocence, we will reverse the conviction, as under these circumstances a reasonable jury must necessarily entertain a reasonable doubt.[6]

To establish a violation of 21 U.S.C. §§ 841(a)(1) and 860(a), the government must prove beyond a reasonable doubt that the defendant (1) knowingly; (2) possessed cocaine; (3) with intent to distribute it; and (4) within 1000 feet of a school.[7] The elements of the offense may be proven either by direct or circumstantial evidence.[8]

### A. Possession

Nealy argues that the evidence is insufficient to support the allegation that he possessed the orange pill bottle containing 3.14 grams of cocaine base. Possession may be either actual or

---

[4]United States v. Rojas Alvarez, 451 F.3d 320, 326 (5th Cir. 2006).

[5]United States v. Hunt, 129 F.3d 739, 742 (5th Cir. 1997).

[6]Id.

[7]See United States v. Kates, 174 F.3d 580, 582 (5th Cir. 1999); 21 U.S.C. §§ 841(a) and 860(a).

[8]Hunt, 129 F.3d at 742.

constructive and may be joint among several people.[9] Constructive possession is ownership, dominion, or control over the illegal drugs, or over the premises where drugs are found.[10]

A reasonable jury could infer that Nealy possessed the 3.14 grams of cocaine base found in the orange pill bottle in Meyers's backyard. Meyers was watching television, and saw an African American male run through his backyard and move his arm as if he was throwing something down. Meyers testified that the orange pill bottle did not belong to him, and he had been in his backyard earlier that day and the items were not present. Meyers could not identify the man who ran through his backyard, but testified that the police were chasing him, and the man jumped the fence into his neighbor's backyard and continued jumping fences. Although no one actually saw Nealy go into Meyers's backyard, Nealy was running through backyards in Meyers's neighborhood, and was observed jumping over a fence just two houses east of Meyers's house moments after Meyers found the items in his backyard. In addition, the cocaine base discovered in Meyers's backyard was in a pill bottle, and the cocaine base found on Nealy's person was also in a pill bottle. As a result, there was sufficient evidence for the jury to conclude that Nealy possessed the 3.14 grams of cocaine base in the orange pill bottle.

---

[9]United States v. Skipper, 74 F.3d 608, 611 (5th Cir. 1996).

[10]United States v. Onick, 889 F.2d 1425, 1429 (5th Cir. 1989).

6

## B. <u>Intent to Distribute</u>

Intent to distribute may be inferred solely from the possession of a quantity of drugs too large to be used by the defendant alone.[11] However, a quantity that is consistent with personal use does not, by itself, raise an inference of intent to distribute such drugs.[12] The presence of additional evidence, such as drug distribution paraphernalia, guns, or large quantities of cash or the value and quality of the substance, is necessary.[13]

Nealy possessed 5.01 grams of cocaine base. The government introduced testimony indicating that this amount of drugs suggested drug dealing. However, the testimony also indicated that this quantity is not clearly inconsistent with personal use. As a result, additional evidence is necessary to show intent to distribute.[14]

The government has provided this additional evidence. The government elicited testimony indicating that the piece of paper found in Nealy's pocket was a "drug ledger." Specifically, Officer Rankin testified that "zone" referred to an ounce of illegal drugs.[15] In explaining the ledger, Officer Rankin stated:

---

[11]<u>Kates</u>, 174 F.3d at 582.

[12]<u>Id.</u>

[13]<u>See</u> <u>id.</u>; <u>Skipper</u>, 74 F.3d at 611; <u>Hunt</u>, 129 F.3d at 743-44.

[14]<u>See</u> <u>Skipper</u>, 74 F.3d at 611; <u>Hunt</u>, 129 F.3d at 742.

[15]The following writing was found on one side of the note:

475 zone - 3 zones 1,425; 2625 - 1,200

> And in the bottom right under that line is another line that's showing 375 zone. What it looks to be would be what someone would be paying for an ounce of drugs on the street, and then if you look over here it shows what he would sell it for and then you have the balance over here which I'm assuming would be his profit.

The Government also offered the testimony of Officer Kallus who provided his expert opinion that the note is a drug ledger. Officer Kallus, an officer with seventeen years of experience with the Temple Police Department and six years of experience as a narcotics interdiction officer, testified that, based on his experience in dealing with drug ledgers and experience from debriefings, the word "zone" was used in reference to cocaine, cocaine base, and methamphetamine. According to Officer Kallus, the paper found on Nealy with notes referring to "zones" and numeric amounts were "drug notes," detailing the amount each ounce of cocaine costs, what it could be sold for, and how much profit could be made from the sale of the cocaine. In addition, at the time of Nealy's arrest, cocaine was selling for approximately $350 to $500 per ounce, and Nealy's paper showed "475 for a zone," and "375 for a zone." Kallus also testified that, in his past narcotics investigations, the descriptions of persons and automobiles found on the other side of the paper were the types of notes that would be kept by a street dealer if drugs had been sold to someone who was unknown to him, and if that is an undercover vehicle, the dealer will know when it shows up the next time.

---

375 zone – (9) qk 3,375 / 600 = 5400.

8

Nealy argues that this evidence is "highly speculative," and the evidence showed that the piece of paper could have been used in referring to Nealy's car detailing business.

Although Nealy is correct that "[a] verdict may not rest on mere suspicion, speculation or conjecture, or an overly attenuated piling of inference on inference,"[16] the jury did not convict Nealy on mere speculation. The jury was entitled to evaluate the evidence provided by Officers Rankin and Kallus and make its own conclusion. Here, the jury presumably drew the reasonable inference that the piece of paper was a drug ledger prepared by someone in the business of selling drugs for a profit. There was no plausible evidence negating the government's argument that the note found in Nealy's pocket was a drug ledger. Although on cross-examination government testimony indicated that it was "possible" that the list of vehicles and descriptions of individuals represent cars that Nealy had detailed and the owners of those cars, the balance of the writing was left unexplained. In addition, Officer Kallus stuck to his opinion that the paper was a drug note. As a result, making all credibility determinations in favor of the jury's verdict, the evidence supports a finding that, in addition to the quantity of cocaine base possessed by Nealy, Nealy also carried with him a drug ledger that one engaged in selling drugs would use.

---

[16]<u>United States v. Pettigrew</u>, 77 F.3d 1500, 1521 (5th Cir. 1996).

9

Viewing the evidence in the light most favorable to the verdict, we are satisfied that a rational trier of fact could reasonably find that Nealy possessed with an intent to distribute more than five grams of cocaine base within 1000 feet of a school.[17]

### III.

For the reasons stated, we AFFIRM Nealy's conviction.

---

[17]Nealy does not dispute that he was within 1000 feet of a school.