United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 21, 2007**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 06-60291

_____

UNITED STATES OF AMERICA

Plaintiff-Appellee,

versus

ANDY JONES

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
(No. 2:05-CR-070)

_____

Before HIGGINBOTHAM, WIENER, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:[*]

Defendant Andy Jones appeals his conviction for possession with intent to distribute more than five grams of cocaine base. For the following reasons, we AFFIRM.

**I. FACTS AND PROCEEDINGS**

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Following a jury trial, Andy Jones was convicted of possession with intent to distribute more than five grams of cocaine base ("crack") in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and sentenced to 120 months imprisonment. Jones asserts that the jury was presented with insufficient evidence to conclude that he intended to distribute the drugs found in his possession. The government presented the following evidence at trial.

On the night of October 2, 2004, Officer Darrell Taylor of the Clarksdale, MS, police department pursued a suspicious vehicle that he ultimately found abandoned, with multiple doors ajar and its gear still in drive. Approximately 30 to 45 seconds after the officer radioed that the vehicle was found abandoned, Officer John Chambers observed Jones "trotting" between houses about one block from the abandoned car. A search of the car did not reveal any contraband or establish any connection to Jones.

When Jones reached the street, Chambers stopped him and asked Jones where he was coming from. Chambers noticed that Jones had something in his mouth, making it impossible for Chambers to understand his response. Chambers conducted a pat-down search of Jones that did not reveal any contraband. By that time, two other officers, Lee Clayton and Ernest Moore, had arrived at the scene. Chambers commanded Jones to spit out what Jones had in his mouth. According to Chambers, Jones spit two golf-ball-sized plastic bags into Jones's hand. To Chambers, the bags appeared to contain crack. Chambers testified that Jones paused for one or two seconds with the plastic bags in his hand and then threw the bags, one of which broke open upon hitting a tree branch and the other of which flew over a house and landed in the back yard.

Clayton did not witness what Jones had in his hand before it was thrown, but heard a noise after the throw that sounded like pebbles hitting the ground. Moore saw Jones throw two bags, one

2

that he heard hit the tree, followed by a sound like gravel being thrown, and the other going over the house. The officers found no evidence of the bag that supposedly hit the tree, but located the other bag, intact, in the backyard of the house.

Results from a DNA test of the plastic bag were a conclusive match to Jones. The plastic bag was determined to contain 7.07 grams of crack, or less than one-third of an ounce. DEA Special Agent Dwayne Smith testified that this quantity of crack had a street value of a little over $700 (or $100 per gram) in Clarksdale. Smith testified that the crack was broken down into small rocks that could be sold, including many $20-dollar rocks, a $50-dollar rock, and a $100-dollar rock; that the crack was kept in a hand-tied clear plastic baggy, which is indicative of drug trafficking; and that Jones did not possess a crack pipe or a lighter, paraphernalia that a crack user would have.

Smith also testified that he had 15 years of experience as a DEA agent and had been involved in "hundreds and hundreds" of drug investigations, with the majority of them involving crack; that he had never seen a case in which a user possessed such a large quantity of crack; and that users typically will have one or two rocks and will smoke a rock as soon as they get it. Under cross-examination, Smith also stated that individuals who distribute drugs commonly possess cell phones, firearms, large quantities of cash, and client lists, and that no such paraphernalia was found on Jones.

After the Government closed its case, Jones moved for a judgment of acquittal, arguing that the evidence was insufficient to show beyond a reasonable doubt that Jones ever possessed the crack. The district court denied the motion. The defense then successfully moved to have the jury instructed on the lesser included offense of simple possession. After the jury found Jones guilty of possession with intent to distribute, Jones filed a timely motion for judgment of acquittal or new trial, arguing

that the evidence was insufficient to prove an intent to distribute and that only simple possession was proven. The district court also denied this motion. Jones filed a timely notice of appeal.

## II. STANDARD OF REVIEW

"In evaluating the sufficiency of the evidence, we view the evidence in the light most favorable to the government and resolve questions of credibility in favor of the jury's verdict." *United States v. Harris*, 477 F.3d 241, 244 (5th Cir. 2007). "The evidence is sufficient to support the jury's verdict if a rational trier of fact could have found beyond a reasonable doubt the essential elements of the charged crime." *Id*.

## III. DISCUSSION

Jones argues that the quantity of crack he allegedly possessed, 7.07 grams, in combination with the other evidence presented at trial, is insufficient to support a conviction for possession with intent to distribute. "The essential elements of possession with the intent to distribute controlled substances in violation of 21 U.S.C. § 841 are 1) knowledge, 2) possession, and 3) intent to distribute the controlled substances." *United States v. Delgado*, 256 F.3d 264, 274 (5th Cir. 2001).

Possession of a small quantity of drugs consistent with personal use does not, without other evidence, raise an inference of intent to distribute. *United States v. Turner*, 396 U.S. 398, 423 (1970) (holding possession of 14.68 grams of a cocaine-sugar mixture not sufficient to infer that the possessor was distributing it). However, "[t]he form and amount of crack recovered is some evidence of an intent to distribute," and this court has found sufficient evidence to support a conviction for possession with intent to distribute in the case of a defendant found with a lesser amount of crack. *United States v. Cain*, 440 F.3d 672, 675 (5th Cir. 2006) (affirming a conviction for possession with intent to distribute when the defendant possessed 2.4 grams of crack broken into

4

over 30 pieces).  In *Cain*, the crack recovered was broken into numerous smaller pieces worth between five and twenty dollars, the total value of the crack was approximately 400 dollars, and "two police officers testified that they had never arrested a drug user with such a large amount of cocaine base."  *Id.*  The officers also testified that the defendant was not carrying any paraphernalia consistent with being a user.  *Id.*

Here, the officers recovered more crack, in both weight and street value, than was recovered from the defendant in *Cain*.  The jury also heard uncontradicted testimony that the quantity Jones possessed was inconsistent with personal use.  *Cf. United States v. Kates*, 174 F.3d 580, 582–83 (5th Cir. 1999) (per curiam) (upholding conviction in part because of uncontroverted testimony from a DEA agent that the quantity of crack was distributable and "hardly ever purchased for personal use").  Finally, the jury also heard testimony that Jones actually spit two very similar bags out of his mouth into his hand before he was arrested, both of which Officer Chambers believed contained crack.  When Jones threw the bags, one broke, and two officers heard a sound consistent with crack rocks landing on the roof of the house.  It would be reasonable from this evidence for the jury to have inferred that Jones was actually carrying more crack than the prosecution could prove and that he had two baggies of crack in his possession when Officer Chambers approached him.

Jones asserts that *United States v. Skipper*, 74 F.3d 608 (5th Cir. 1996), supports his position.  In *Skipper*, the defendant possessed 2.89 grams of crack and a straight-edge razor, but no smoking paraphernalia.  *Id*. at 611.  The arresting officer testified that the razor was consistent with personal consumption, because it could be used to cut the crack into smaller pieces.  *Id*.  Consequently, the only evidence from which the jury could infer intent to distribute was the quantity of crack, but this court held that "this quantity is not clearly inconsistent with personal use" and reversed the

5

conviction. *Id.* Unlike this case, in which the unrebutted testimony at trial was that the quantity of drugs possessed by Jones was inconsistent with personal use, in *Skipper* the government merely "introduced some testimony indicating that this amount of drugs *could* suggest drug dealing." *Id.* (emphasis added).

In *United States v. Hunt*, 129 F.3d 739, 744 (5th Cir. 1997), this court reversed the conviction of a defendant found with 7.998 grams of crack (worth 200 dollars) in her bedroom. In *Hunt*, trial testimony "indicated, as in *Skipper*, that [the amount possessed] was also consistent with personal use." *Id.* at 742. In particular, a police detective testified in *Hunt* that a crack addict may smoke nearly 500 dollars of crack in a single day. *Id.* at 741. Moreover, the defendant's house contained paraphernalia (a razor blade and cigar wrappers) which the detective admitted were consistent with personal use, though it did not contain any pipes or other smoking devices. *Id.* at 743. Here, the jury did not hear any testimony that the quantity of drugs or any of the other circumstances of Jones's arrest were consistent with his personal use of the crack he possessed.

The only testimony that might arguably raise the inference that Jones was not distributing the crack was that he did not possess a cell phone, a firearm, large quantities of cash, or a client list when he was arrested, these items being commonly found on drug dealers. However, this evidence does not by itself negate the value of the other evidence presented. Viewing the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could find beyond a reasonable doubt that Jones possessed the crack with an intent to distribute it.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

6