

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. 1923-06

**LARRY GLENN HAYNES, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIRST COURT OF APPEALS
### HARRIS COUNTY

**KELLER, P.J., filed a dissenting opinion in which COCHRAN, J., joined.**

In a fractured decision, in which no opinion commanded a majority, the Court in *Collier v. State* came to the remarkable conclusion that insufficiency of the evidence of an aggravating element of an offense may result in an acquittal rather than in conviction of the unaggravated lesser-included offense.[1] This conclusion is remarkable because a jury's verdict on a greater offense necessarily

---

[1] *See* 999 S.W.2d 779, 779-83 (Tex. Crim. App. 1999)(plurality op.); *id.* at 783-85 (Keasler, J., concurring); *see also id.* at 785-90 (Keller, J., dissenting).

constitutes a finding on every essential element of a lesser-included offense.[2]  Despite the fact that the lead opinion in *Collier v. State* was only a plurality, the Court contends that we are bound to follow *Collier* as a matter of *stare decisis*, and as a consequence, declines to re-examine the merits of the positions taken by the various opinions in that case.  Because I disagree with the conclusion that we are bound by *Collier*, and because I disagree with *Collier*, I respectfully dissent.

The Court's first reason for concluding that we are bound by *Collier* is that the lead opinion's "overreaching" rationale can be traced back to earlier majority opinions in *Stephens v. State*[3] and *Ex parte Granger*.[4]  But *Stephens* is distinguishable because in that case the defendant asked for but was denied submission of a lesser-included offense, while in *Collier* and the present case, neither party asked for the submission of a lesser-included offense.[5]  Even though the State in *Stephens* did not oppose the defendant's request, it did not join the request either,[6] and so, at least arguably, the State relinquished conviction on the lesser-included offense.  Although *Granger* did not appear to view *Stephens* so narrowly, instead citing *Stephens* broadly for the proposition that a State's failure to request a lesser-included offense could prevent the State from prosecuting that offense in a subsequent trial, *Granger* was a case where the State prevailed because it *did* request the lesser-

---

[2]  *See Ex parte Granger*, 850 S.W.2d 513, 519 (Tex. Crim. App. 1993).

[3]  806 S.W.2d 812 (Tex. Crim. App. 1990).

[4]  Court's op. at 5.

[5]  *Stephens*, 806 S.W.2d at 817.

[6]  *Id.* at 817-18.

included offense,[7] and so the Court was not required to decide how to treat a situation in which neither party requested the instruction.

Even read broadly, however, *Stephens* and *Granger* are distinguishable for another reason: In those cases, the State sought to prosecute the defendant a second time, albeit only for the lesser-included offense, and the defendant interposed a claim of double jeopardy.[8] The Court was not called upon in either of those cases to determine whether, in the *first* prosecution, reformation to a lesser-included offense (and remand for re-sentencing) would have been the appropriate remedy for an appellate finding of legally insufficient evidence.[9] Indeed, the lead opinion in *Collier* observed that the reformation question before it was "one of first impression in this Court," and neither the lead opinion nor Judge Keasler's concurring opinion even cited to *Stephens* or *Granger*.[10]

And the procedural posture of the case crucially impacts the double-jeopardy question. Because an acquittal is considered a jeopardy-terminating event, subjecting a defendant "to postacquittal factfinding proceedings *going to guilt or innocence* violates the Double Jeopardy Clause."[11] But the reformation remedy considered in *Collier* (and here) would not result in a complete acquittal of the offense (as there would still be a conviction for the lesser-included), and, to the extent subsequent fact-finding proceedings could be characterized as "postacquittal," they

---

[7] *Granger*, 850 S.W.2d at 519-20.

[8] *See Stephens* and *Granger*, generally.

[9] *See id., passim*.

[10] *See Collier*, 999 S.W.2d at 779-85. But those cases were discussed in Presiding Judge McCormick's opinion dissenting to the denial of the State's motion for rehearing. *See id.* at 792-93.

[11] *Smalis v. Pennsylvania*, 476 U.S. 140, 145 (1986)(emphasis added).

involve only the matter of *punishment*.

Moreover the procedural posture was an important part of the "overreaching" rationale. It is worth pointing out that the Court did not, either in *Stephens* or in *Granger*, use the words "overreaching," or "misconduct," or any of their synonyms, to describe a prosecutor's failure to request a lesser-included offense submission.[12] The question presented in *Stephens* and *Granger* was whether the circumstances surrounding the appellate acquittal for a greater offense were sufficiently compelling to permit an exception to the usual prohibition against fact-finding proceedings on guilt after an acquittal; we essentially held that, when the jury charge in the first prosecution did not include the lesser-included offense and the State failed to request it, the circumstances are not sufficiently compelling.[13] That is, the State's "overreaching" simply prevented it from overcoming the usual double-jeopardy rules that operated in a defendant's favor. The "overreaching" rationale did not have independent force outside the double-jeopardy context.

To the extent that the reasoning in *Stephens* and *Granger* can be used to support the idea that a prosecutor's failure to request the submission of a lesser-included offense precludes the remedy of reformation, that reasoning is inconsistent with our later decision in *Malik v. State*.[14] Rejecting the notion that the legal sufficiency of the evidence should be tied to the jury charge that was actually

---

[12] *See Stephens* and *Granger*, *passim*.

[13] *See Stephens*, 806 S.W.2d at 819 (discussing the State's claim that "reversal based on insufficiency of the evidence as to the aggravating element should not be accorded the same status as other appellate reversals because the issue of the lesser included offense was never presented to the jury"); *Granger*, 850 S.W.2d at 520 (State's failure to pursue lesser-included offense instruction was the equivalent of the trial being "abandoned or aborted by the state without manifest necessity").

[14] 953 S.W.2d 234 (Tex. Crim. App. 1997).

submitted, *Malik* overruled the prior *Benson/Boozer*[15] rule that required the State to object to an error in the charge in order to preserve the appellate court's ability to conduct a sufficiency review under the correct offense elements.[16] Rather, *Malik* held that, even absent a State objection to the charge, legal sufficiency was to be measured by "the elements of the offense as defined by the hypothetically correct jury charge for the case."[17] The *Malik* Court signaled that evidentiary sufficiency was not a game that depended upon what instructions the parties requested: it turned upon "an actual failure in the State's proof of the crime rather than a mere error in the jury charge submitted."[18] Indeed, in his concurring opinion in *Malik*, Judge Meyers noted that the *Benson/Boozer* objection requirement (that *Malik* overturned) was "consistent with" the request rule articulated in *Stephens* and *Granger*.[19]

The Court's second reason for concluding that we are bound by *Collier* is that Judge Keasler's concurring opinion controls, because it "contains the narrowest ground upon which five of the judges concurring in the judgment in *Collier* agreed," and the rules of appellate procedure upon which Judge Keasler's opinion were based have not changed.[20] But the Court characterizes Judge Keasler's opinion as the narrowest holding on when a judgment *can* be reformed: if the lesser-

---

[15] *Benson v. State*, 661 S.W.2d 708 (Tex. Crim. App. 1982); *Boozer v. State*, 717 S.W.2d 608 (Tex. Crim. App. 1984).

[16] *Malik*, 953 S.W.2d at 236, 239.

[17] *Id.* at 239.

[18] *Id.* at 240.

[19] *Malik*, 953 S.W.2d at 242 n. 4 (quoting *Granger*, which included a discussion of *Stephens*).

[20] Court's op. at 5-6.

included offense is submitted in the jury charge. In *Collier*, the judgment was *not* reformed, so any holding arising from that case must be about when the judgment *cannot* be reformed. The lead opinion is the narrowest with respect to that question: that a judgment cannot be reformed (at least) when the lesser-included offense was not submitted and was not requested.

The conclusion that the plurality opinion articulates the narrowest rule can also be derived from a more common-sense approach. Counting the number of judges aligned with each position, the lead opinion articulates the manner in which all cases would be resolved: eight judges would have allowed reformation if a lesser-included offense instruction had been either submitted or requested, while five judges would have denied reformation if an instruction was neither submitted nor requested.[21]

Furthermore, Judge Keasler's opinion garnered no other votes. None of the other eight judges on the Court subscribed to the view that the rules of appellate procedure placed a limitation on an appellate court's ability to reform a judgment to reflect a lesser-included offense. The lead opinion's conclusion was based, not upon the rules of appellate procedure, but upon a policy rationale involving "risks and benefits."[22] Because the lead opinion and Judge Keasler's concurring opinion contain entirely disparate rationales (which in turn differ from the dissent), one can derive no binding legal principle from those opinions; all one can do is arrive at a result in a particular case by deciding how a defendant fares under each of the three competing viewpoints and then add up the

---

[21] *See Collier v. State*, 999 S.W.2d 779, 790 (Tex. Crim. App. 1999)(Johnson, J., concurring in denial of State's motion for rehearing).

[22] *Collier*, 999 S.W.2d at 781-82 (quoting *State v. Myers*, 158 Wis. 2d 356, 461 N.W.2d 777 (Wis. 1990)).

number of judges who come down on his side. Under these circumstances, we should not hesitate to re-examine *Collier* without the constraints of *stare decisis*.

A re-examination shows *Collier* to be wanting. The lead opinion pointed to no constitutional provision, statute, or appellate rule to support its position.[23] Instead, it relied upon a policy argument expressed in an out-of-state decision.[24] The policy argument was that permitting reformation to a lesser-included offense when the State did not seek to include that offense as an alternative in the jury charge would afford the State all the benefits of its "go for broke" strategy with none of the risks and would rescue the State from "a trial strategy that went awry."[25] There are two problems with this argument.

First it is untrue. As the discussion in *Collier* observes, when neither the State nor the defendant asks for the submission of a lesser-included offense, both parties "go for broke."[26] The State gambles that the jury will decide to convict of a greater offense that is weakly supported by the evidence rather than allow a defendant who is obviously guilty of some crime to go free,[27] while the defendant gambles that the jury will acquit on the basis of the weakness in the evidence with respect to the greater offense because the jury instructions do not cover the crime the jury believes was committed. Both parties avoid the middle option that the jury might be more likely to choose (the

---

[23]  *See id.* at 779-83.

[24]  *Id.* at 781-82.

[25]  *Id.* (discussing *Myers*).

[26]  *Id.* at 782.

[27]  *See id.*

lesser-included offense) while pursuing the most favored option (conviction on the greater offense for the State, acquittal for the defendant) and risking the least favored option (acquittal for the State, conviction on the greater offense for the defendant). If one takes into account only the jury verdict, the risks and potential benefits pursued by both sides are equal.

If one takes into account a defendant's ability to appeal, the playing field becomes unequal, but contrary to the discussion in the lead opinion in *Collier*, it is the defendant who benefits disproportionately, not the State. The State cannot appeal an acquittal,[28] but the defendant can appeal a conviction. If the State's strategy fails before the jury, the loss is irrevocable, but if the defendant's strategy fails before the jury, there is still the possibility of succeeding on appeal (as happened in this case). Allowing reformation instead of a full-blown acquittal simply serves to mitigate somewhat the imbalance in favor of the defendant.

The second problem with the lead opinion's argument is that there is no good reason why the courts must insure an equal playing field in this context. The trial is "the main event rather than a tryout on the road."[29] The appellate scales are supposed to be weighted in favor of upholding a trial court's judgment of conviction, and this weighting includes, for example, the highly deferential standard of review for legal-sufficiency claims.[30] Appellate remedies should not be easy to procure, least of all a full-blown acquittal – "the greatest form of relief in the criminal system."[31]

---

[28] *United States v. Wilson*, 420 U.S. 332, 352 (1975)

[29] *Anderson v. Bessemer City*, 470 U.S. 564 (1985).

[30] *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

[31] *Malik*, 953 S.W.2d at 239.

Moreover, equalizing the playing field in the manner contemplated by the lead opinion in *Collier* is simply inconsistent with what legal-sufficiency reviews are all about. Legal-sufficiency claims are due-process claims,[32] and we have recognized that the remedy for a due-process claim should be narrowly tailored to neutralize the taint of the constitutional violation.[33] As explained above, the gravamen of a legal-sufficiency claim is the State failing to prove its case, so the remedy should be narrowly tailored to neutralize that wrong. We should not be concerned in the legal-sufficiency context with missteps made by the State regarding what is included in the jury charge. A misstep in the jury charge can be remedied by means other than an acquittal, such as a new trial on the lesser-included offense.[34]

Judge Keasler's concurring opinion in *Collier* relied upon a rule of appellate procedure for the proposition that appellate courts simply do not have the power to reform a judgment to a lesser-included offense if the lesser-included offense was not submitted in the jury charge.[35] I must respectfully disagree. Rule 43.2 permits an appellate court to "reverse the trial court's judgment in whole or in part and render the judgment that the trial court should have rendered."[36] Judge Keasler

---

[32] *Jackson*, 443 U.S. at 319.

[33] *Cook v. State*, 940 S.W.2d 623, 628 n. 7 (Tex. Crim. App. 1996).

[34] *United States v. Hunt*, 129 F.3d 739, 745-46 (5th Cir. 1997)(remedy of reformation allowed even if lesser-included offense was not submitted to the jury unless the defendant was prejudiced, in which case the remedy would be a new trial); *see also Rutledge v. United States*, 517 U.S. 292, 305-06, 305 n.15 (1996)("federal appellate courts appear to have uniformly concluded that they may direct the entry of judgment for a lesser included offense when a conviction for a greater offense is reversed on grounds that affect only the greater offense" if "no undue prejudice will result to the accused").

[35] 999 S.W.2d at 783-85.

[36] TEX. R. APP. P. 43.2(c).

concluded that the trial court would be authorized to render judgment for a lesser-included offense only if the lesser-included offense had been submitted to the jury.[37]

But this reasoning does not really account for the unique features of a legal-sufficiency claim. When the evidence is sufficient to support the greater offense but also raises the lesser-included offense, submission of the lesser-included offense is optional with the parties.[38] The situation is different, however, when the evidence is legally insufficient to support the greater offense. A finding of legally insufficient evidence to support an offense is tantamount to a finding that the offense should never have been submitted to the jury.[39] It follows that, if the legal insufficiency goes only to an element that distinguishes a greater offense from one that is lesser-included, then only the lesser-included offense should have been submitted to the jury. Under those circumstances, had a motion for directed verdict been presented at the close of the evidence, the trial court would have been required to render a judgment of acquittal on the greater offense and to submit the lesser-included offense to the jury. But a defendant is not required to file a motion for directed verdict to preserve a legal-sufficiency claim on appeal.[40] So, even absent a motion for directed verdict, only the lesser-included offense should have been submitted to the jury. And, as I pointed out at the beginning of this opinion, because the jury actually found the greater offense, it necessarily found every element of that lesser-included offense. Since the jury found every element of the only offense

---

[37] *Collier*, 999 S.W.2d at 784.

[38] *Delgado v. State*, 235 S.W.3d 244, 249-250 (Tex. Crim. App. 2007).

[39] *Malik v. State*, 953 S.W.2d at 236-37.

[40] *Moff v. State*, 131 S.W.3d 485, 488-89 (Tex. Crim. App. 2004).

that it should have been permitted to consider, the judgment the trial court should have rendered was

a judgment of conviction for the lesser-included offense.[41]

      I respectfully dissent.

Filed: April 30, 2008
Publish

---

   [41] Once rendition of the judgment for the lesser-included offense occurs pursuant to Rule 43.2(c), a remand for a new sentencing hearing is authorized under Rule 43.3(a). TEX. R. APP. P. 43.3(a)("When reversing a trial court's judgment, the court must render the judgment that the trial court should have rendered, except when . . . a remand is necessary for further proceedings.").