IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00309-CR

No. 10-07-00310-CR

 

Kelvin Kianta Brooks,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 19th District Court

McLennan County, Texas

Trial Court Nos. 2007-844-C1 and
2007-845-C1

 



MEMORANDUM  Opinion



 








            In cause number 10-07-00309-CR, a jury
convicted Kelvin Kianta Brooks of possession of cocaine with intent to deliver
and sentenced him to twenty-five years in prison.  In two points of error, he
challenges the legal and factual sufficiency of the evidence to support this
conviction.  In cause number 10-07-00310-CR, the jury convicted Brooks of
possession of ecstasy and sentenced him to ten years in prison.  In a single
point, he challenges the factual sufficiency of the evidence to support this
conviction.  We affirm in part and reverse and remand in part.

FACTUAL BACKGROUND

Officers Rondell Blatche and Robert Bruce were
dispatched to investigate a claim that an African-American male wearing a red and
white baseball jersey was in a bar with a handgun.  Upon entering the bar, the
officers observed Brooks, who matched this description.  The officers
approached Brooks and asked him to accompany them outside.  Brooks asked if the
officers were talking to him and Bruce replied, “Yes.”  According to Blatche,
Brooks stated that he was not going anywhere with “you m----- f------.”  The
officers drew closer and Bruce attempted to grab Brooks’s arm.  Brooks jerked
his arm away and began running, digging in his pockets and waist area.  Blatche
saw Brooks throw two clear plastic bags towards a pool table.  Bruce also saw
Brooks throw something.  No one other than Brooks was in the vicinity where the
items were thrown.

Still fearing that Brooks possessed a weapon, the
officers ordered Brooks to show his hands.  When Brooks failed to comply, the
officers drew their tasers.  Bruce deployed his taser and struck Brooks in the
leg.  Brooks was eventually restrained.  He was in possession of a cell phone
and a few dollars.

Blatche located a bag of marihuana under the pool
table.  Bruce located a bag of crack cocaine and ecstasy pills in the ball
return.  The officers did not find any drug paraphernalia.  Brooks did not
appear to be under the influence of narcotics.  The officers never located a
gun.

Brooks testified that the officers arrived as he
was racking the pool balls in preparation of playing a second game of pool with
Brian Robinson.  The officer was pointing and telling him to approach.  Because
Robinson was standing behind him, Brooks asked, “You mean me?”  He denied using
any fowl language.  He also denied being so close to the officers that Bruce
could grab his arm.  He panicked when the officers drew their tasers, began
running, dropped a pool stick that he had been holding, and began digging in
his pants to retrieve the bag of marihuana, which he intended to discard.  He
claimed that he was tased on his hand, leg, and arm.  During Brooks’s arrest,
Blatche grabbed the arm that had been tased.

Robinson testified that when the officers entered
the bar, their hands were on their tasers and they said, “You in the red and
white, come here.”  Because he was wearing red and white, Robinson approached. 
The officers responded, “No, not you. Kelvin.”  Robinson noticed that Brooks
acted as though he had a previous run-in with the officers and seemed nervous
and scared.  Robinson saw Brooks throw the marihuana, but not the cocaine. 
Neither did he see Brooks in possession of cocaine.  He testified that Brooks
was tasered twice and fell in a different location than where the officers
testified that he fell.

Forensic scientist Lindsay Kaltwasser testified
that the bag of cocaine held 4.72 grams.  Allen Thompson, a drug enforcement unit
investigator, testified that the bag held two large rocks, one small rock, and
crumbs.  According to Thompson, dealers usually carry more than two rocks, a
gram or more indicates a dealer, and 4.72 grams is a dealer amount.  The
cocaine was worth $470 and could be cut into 23 to 24 rocks, using a thumbnail
or sharp object.  It is common for a dealer to break off a piece of a large
rock and sell that piece.  A dealer may carry his entire “stash” on his person. 
He testified that ecstasy, or methamphetamine, is worth approximately $10 to
$20 per pill.

Thompson testified that there is no such thing as
a “typical” user.  Addictive individuals will use the product as quickly as it
can be obtained, while others use it recreationally.  However, a crack cocaine user
is doing good to have more than 1 or 2 rocks because a user does not save the
crack, but smokes it as soon as possible.  He rarely encounters users in
possession of more than one or two rocks.  While users carry a crack pipe or
other heating element, dealers do not usually carry such items because they do
not use their own product.  He testified that a pool table pocket would be a
good place to hide or sell drugs.

Thompson identified other ways to determine
whether a person is a dealer: (1) possession of five, ten, or twenty dollar
bills; (2) names in the person’s cell phone; (3) possession of a receipt or
other document identifying who owes what; (4) possession of a weapon; or (5) others
in the area observed the person trying to sell drugs.  These factors were not
present in Brooks’s case.  Thompson also admitted that a person in possession
of 4.72 grams could have purchased the drugs for friends or could be using it
over a period of days.

Brooks denied possessing the bag of cocaine and
did not know how the bag came to be in the ball return.  Blatche, however, was
positive that he saw Brooks throw two bags, confirmed by the fact that he
recovered two bags.  According to Blatche, Bruce, and Robinson, Brooks was the
only person in the area of the pool table where the drugs were found.

Brooks admitted that he has two previous convictions
for possession of cocaine and a previous conviction for possession with intent
to deliver cocaine.  He also admitted that the bags of cocaine and marihuana
were both tied and packaged in the same manner.

STANDARDS OF REVIEW

Under legal sufficiency review, we determine whether, after
viewing all the evidence in the light most favorable to the verdict, any
rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt.  Curry
v. State, 30
S.W.3d 394, 406 (Tex. Crim. App. 2000) (citing Jackson
v. Virginia, 443
U.S. 307, 318-19, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)). 
We do not resolve any conflict of fact or assign credibility to the witnesses,
as this was the function of the trier of fact.  See Dewberry
v. State, 4
S.W.3d 735, 740 (Tex. Crim. App. 1999); see also Adelman
v. State, 828
S.W.2d 418, 421 (Tex. Crim. App. 1992); Matson
v. State, 819
S.W.2d 839, 843 (Tex. Crim. App. 1991).  Inconsistencies in the
evidence are resolved in favor of the verdict.  Curry, 30 S.W.3d at 406; Matson, 819 S.W.2d at 843.

Under factual sufficiency review, we ask whether a
neutral review of all the evidence demonstrates that the proof of guilt is so
weak or that conflicting evidence is so strong as to render the jury’s
verdict clearly wrong and manifestly unjust.  Watson v. State, 204 S.W.3d 404, 414-15 (Tex.
Crim. App. 2006); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000).  We review the evidence weighed by the jury that tends
to prove the existence of the elemental fact in dispute and compare it with the
evidence that tends to disprove that fact.  Johnson, 23 S.W.3d at 7.  We
do not indulge in inferences or confine our view to evidence favoring one
side.  Rather, we look at all the evidence on both sides and then make a
predominantly intuitive judgment.  Id.

Intent to deliver

Intent to deliver may be established by
circumstantial evidence.  Moreno v. State,
195 S.W.3d 321, 325 (Tex. App.—Houston [14th Dist.] 2006, pet. ref’d).  A number of factors are relevant to this issue: (1) the nature of the location where the defendant
was arrested; (2) the quantity of drugs the defendant possessed; (3) the manner
of packaging of the drugs; (4) the presence or absence of drug paraphernalia
(for use or sale); (5) whether the defendant possessed a large amount of cash
in addition to the drugs; and (6) the defendant’s status as a drug user.  Erskine v. State, 191 S.W.3d 374, 380 (Tex. App.—Waco 2006, no pet.).  Expert testimony may also be used to establish intent.  See
id.  The “number of factors
present is not as important as the logical force the factors have in establishing
the elements of the offense.”  Moreno, 195 S.W.3d at 326.

Analysis

In reliance on United States v. Skipper,
74 F.3d 608 (5th Cir. 1996) and United States v. Hunt, 129 F.3d 739
(5th Cir. 1997), Brooks contends that the
only evidence of intent arises out of the amount of cocaine found at the scene,
an amount that is consistent with
personal use and that, standing alone, cannot establish intent.

            In Skipper, the defendant was
in possession of 2.89 grams of crack cocaine and a razor.  See Skipper,
74 F.3d at 610.  The State introduced
evidence that Skipper had previously been convicted of possession of a
controlled substance.  Id.  Testimony established that 2.89 grams suggests
dealing and the razor could be used to cut the cocaine for personal use.  Id. at 611.  The Fifth Circuit held that 2.89 grams “is not clearly inconsistent
with personal use” and “alone is insufficient to prove intent.”  Id.  “Additional evidence is necessary.”  Id.  The razor did not constitute
additional evidence because it could be consistent with both distribution and personal
use.  See id.     

            In Hunt, police located a brown
paper bag containing marihuana, loose tobacco and cigar labels, a loaded
handgun, 7.998 grams of crack cocaine, and a razor blade in Hunt’s home.  See
Hunt, 129 F.3d
at 741.  Detective Ruben Rodriguez testified that the cocaine was worth $200, possibly
more, and was a distributable amount, but an addict could smoke $500 worth in
one day.  Id.  He further testified that a razor is used to cut cocaine
for either distribution or personal use, the absence of crack pipes at the home
indicated that no users resided there, and the tobacco and cigar wrappings were
evidence of “primos,” which are used to smoke cocaine.  Id.  Marihuana
and cocaine were sold in the area.  Id.  A forensic drug analyst
testified that he usually tests rocks smaller than the ones found at Hunt’s
home.  Id.

Hunt admitted using the marihuana, but denied
using cocaine, knowing about the cocaine, or selling drugs.  Id.  She
admitted owning the gun, but not the tobacco.  Id.  She had given a key
to another individual who was living in the house and that person had obtained
the marijuana.  Id.  Hunt’s neighbor had never observed Hunt use or deal
cocaine.  Id.

The Fifth Circuit held that the evidence failed to
“provide[] a sound basis for inferring that Hunt intended to distribute the
cocaine.”  Id. at 743.  The amount, razor, and “primos” were all
consistent with personal use, a user could smoke more cocaine in a single day
than the amount found in Hunt’s home, and the State conceded during oral
argument that the amount alone is insufficient to support an inference of
intent.  See id.

In Texas, a large quantity of drugs alone can be
sufficient evidence of intent where accompanied by expert testimony.  See Pitts v. State, 731 S.W.2d 687, 691-92 (Tex. App.—Houston [1st Dist.]
1987, pet. ref’d) (1,025
grams of cocaine); see also Morrow
v. State, 757 S.W.2d 484, 487-88 (Tex. App.—Houston [1st Dist.] 1988, pet.
ref’d) (3,013 grams of cocaine); Guerrero v. State, No. 08-04-00177-CR, 2005 Tex. App. Lexis 8658, at *6-10 (Tex. App.—El Paso Oct. 20,
2005, no pet.) (not designated for publication) (2,000 grams of cocaine); Malvais
v. State, No. 05-98-00873-CR, 2000 Tex. App. Lexis 2487, at *6-12 (Tex.
App.—Dallas Apr. 14, 2000, no pet.) (not designated for publication) (997 grams
of cocaine).  The converse would be
that a small quantity of drugs is not alone sufficient to establish intent.  Thus,
we agree with Skipper and Hunt that the quantity of drugs alone
cannot establish intent if it is consistent with personal use, unless supported
by additional evidence.

Here, the quantity of cocaine totals 4.72 grams. 
Thompson testified that this is a dealer amount, but admitted that it could
also be consistent with personal use.  Standing alone, 4.72 grams is
insufficient evidence of intent; additional evidence is required.  See Skipper,
74 F.3d at 611.

The State argues that additional evidence exists
for several reasons: (1) both the bag of marihuana and the bag of cocaine were packaged
in the same manner; (2) Brooks was not in possession of any drug paraphernalia
for either use or sale; (3) Thompson testified that users typically carry some
type of heating element, such as a crack pipe, but dealers do not; (4) at the
time of his arrest, Brooks was not under the influence of a narcotic; (5)
Brooks has a previous conviction for possession with intent to deliver; (6)
Brooks attempted to evade capture and discarded contraband in the process; and
(7) Brooks was found in possession of three different types of drugs.  Brooks
responds that there were no reports of drug activity or conduct consistent with
drug activity and he was not found in possession of large amounts of money,
paraphernalia, packaging materials, cutting materials, receipts, ledgers, or
weapons.

Viewing the evidence in the light
most favorable to the verdict, the evidence is legally sufficient to
establish possession with intent to deliver.  However, viewing the evidence in a
neutral light, it is not factually sufficient.  The record does not reflect
that Brooks was arrested in a high crime or high drug area, the drugs were packaged
in such a way to suggest that Brooks is a dealer, Brooks was in possession of
any drug paraphernalia for the purpose of dealing, or Brooks
possessed a large amount of cash.  See Hillman
v. State, No. 02-03-171-CR, 2004 Tex. App. Lexis 3210, at *10-11 (Tex. App.—Fort Worth
Apr. 8, 2004, pet. ref’d) (not designated for publication).[1] 
That he fled or discarded contraband certainly evidences a guilty conscience,
but such guilt is just as consistent with possession as with intent to deliver.

Accordingly, we find the proof of guilt to be so
weak as to render the jury’s verdict clearly wrong and manifestly unjust.  See
Watson, 204 S.W.3d at 414-15;
see also Johnson, 23 S.W.3d at 11.  We
overrule Brooks’s first point of error, but sustain his second point of error in
cause number 10-07-00309-CR.

Possession of ecstasy

A defendant commits unlawful possession of a
controlled substance where he: (1) exercised control, management, or care over
the substance; and (2) knew the matter possessed was contraband.  Poindexter v. State, 153 S.W.3d 402, 405 (Tex. Crim.
App. 2005).  When the defendant is not in exclusive possession or
control of the place where contraband is found, the State must affirmatively
link the defendant with the contraband.  See id.
at 406.

The Court of Criminal Appeals has recently
provided the following explanation for the “so-called ‘affirmative links’
rule”:

[I]n a possession of a controlled substance
prosecution, “the State must prove that: (1) the accused exercised control,
management, or care over the substance; and (2) the accused knew the matter
possessed was contraband.”  Regardless of whether the evidence is direct or
circumstantial, it must establish that the defendant’s connection with the drug
was more than fortuitous.  This is the so-called “affirmative links” rule which
protects the innocent bystander—a relative, friend, or even stranger to the
actual possessor—from conviction merely because of his fortuitous proximity to
someone else’s drugs.  Mere presence at the location where drugs are found is
thus insufficient, by itself, to establish actual care, custody, or control of
those drugs.  However, presence or proximity, when combined with other
evidence, either direct or circumstantial (e.g., “links”), may well be
sufficient to establish that element beyond a reasonable doubt.  It is, as the
court of appeals correctly noted, not the number of links that is dispositive,
but rather the logical force of all of the evidence, direct and circumstantial.

 

Evans v. State, 202 S.W.3d 158, 161-62 (Tex. Crim. App. 2006) (quoting Evans v.
State, 185 S.W.3d 30, 34 (Tex. App.—San Antonio 2005)) (footnotes
omitted).  The Court cautioned against use of the term “affirmative links” as
suggesting “an independent test of legal sufficiency” and chose instead to use
only the term “‘link’ so that it is clear that evidence of drug possession is
judged by the same standard as all other evidence.”  Id. at 161 n.9.

            Thus, we examine the record for direct
or circumstantial evidence which, when viewed in the light most favorable to
the verdict, established that Brooks exercised control, management, or care
over the contraband and knew that it was contraband.  See id. at 161-62.

Several facts lead us to conclude that the
evidence is factually sufficient to support Brooks’s conviction for possession
of ecstasy.  Brooks attempted flight and was observed making gestures that
indicated the disposal of contraband.  The ecstasy was found inside the ball
return of the pool table near where Brooks was arrested; he was in close
proximity to where the drugs were recovered and the drugs were accessible to
him.  Other contraband was also found at the scene.  Brooks admitted owning the
marihuana.

Regardless of these facts, Brooks urges that the
evidence is factually insufficient because: (1) he denied possessing the
ecstasy; (2) Robinson did not see Brooks possess or throw the ecstasy; (3) the
bag of ecstasy and the bag of marihuana were found in different locations; (4)
the ecstasy would have to be thrown directly into the ball return and could not
land there by chance when Brooks was running from the officers; (5) the ball
return is not an unusual place to hide drugs; (6) we cannot know how far into
the ball return the bag landed because the record contains no photograph
showing the bag’s location inside the ball return; and (7) only Blatche saw
Brooks throw two bags.

However,
as the sole judge of the weight and credibility of the evidence, the jury bore
the burden of determining whether the bag was capable of landing in the ball
return and whether to believe Brooks and Robinson or Blatche.  See Lancon v. State, 253 S.W.3d 699, 707
(Tex. Crim. App. 2008) (“Because the
jury is the sole judge
of a witness’s credibility,
and the weight to be given the testimony, it may choose to believe some
testimony and disbelieve other testimony”).  Citing Reina v. State, 940 S.W.2d
770 (Tex. App.—Austin 1997, pet. ref’d) and Lancon v. State, 220 S.W.3d 57 (Tex. App.— San
Antonio 2006), Brooks suggests that we may ignore the jury’s
determinations where overwhelming evidence indicates that they are clearly
wrong.  Yet, Reina was decided before the Court of Criminal
Appeals’ decision in Watson, which reformulated the factual sufficiency
standard of review.  See Watson, 204 S.W.3d at 414-15.  As for Lancon,
the
Court of Criminal Appeals recently reversed that decision, holding that the San
Antonio Court incorrectly applied Watson by failing to defer to the
jury’s verdict where the “case was largely based on a determination of the
credibility of the witnesses.”  Lancon, 253 S.W.3d at 706-07.

The
jury was free to resolve any conflicts or inconsistencies in the evidence
either for or against Brooks.  See id. at 707.  In
doing so, it could reasonably conclude that Brooks was in possession of the ecstasy
the officers recovered from the ball return.  The proof of guilt is not so weak nor
the conflicting evidence so strong as to render the jury’s verdict clearly
wrong and manifestly unjust.  See Watson, 204 S.W.3d at 414-15;
see also Johnson, 23 S.W.3d at 11.  Because the evidence is factually sufficient to
support such a conclusion, we overrule Brooks’s sole point of error in cause
number 10-07-00310-CR.

CONCLUSION

            We reverse Brooks’s conviction in
cause number 10-07-00309-CR for possession of a controlled substance with
intent to deliver and remand that cause to the trial court for further
proceedings consistent with this opinion.  We affirm the judgment in cause
number 10-07-00310-CR.

 

FELIPE REYNA

Justice

 

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray concurring and dissenting with a note)*

Judgment reversed and
remanded in cause number 10-07-00309-CR,

Judgment affirmed in
cause number 10-07-00310-CR,

Opinion delivered and
filed October 1, 2008

Do not publish

[CRPM]

 

*           (Note
by Chief Justice Gray: “Chief Justice Gray dissents from the reversal of
Brooks’s conviction for possession of cocaine with the intent to deliver in
cause number 10-07-00309-CR.  A separate opinion will not issue.  He notes,
however, that there is more evidence of intent to deliver than merely the
amount of cocaine.  An expert opined based upon all the facts and
circumstances, including that Brooks was in possession of three different types
of drugs in a public place, that Brooks was in possession with the intent to
deliver.  He further notes that, in his opinion, the Court has failed to comply
with the requirement expressed in Cain v. State, 958 S.W.2d 404, 407
(Tex. Crim. App. 1997), to detail the evidence and clearly state why the
evidence that is legally sufficient is nevertheless factually insufficient.”)









[1]               Hillman possessed 7.5 grams of
methamphetamine, 70 “hits” worth $700, which was found hidden under the console
of his vehicle.  Hillman
v. State, No. 02-03-171-CR, 2004 Tex. App. Lexis 3210, at *9 (Tex. App.—Fort Worth Apr. 8, 2004, pet. ref’d) (not designated for publication).  An expert testified that it is
unusual for a user to carry this amount of methamphetamine, dealers commonly
make alterations to their vehicles to hide drugs, and users usually carry drugs
on their person.  See id.  The Fort Worth Court found the evidence
legally, but not factually, sufficient because there existed no evidence of any
other circumstances tending to prove intent, such as “evidence that Hillman
possessed an excessive amount of cash; that the drugs were packaged in a manner
indicating intent to sell; that Hillman possessed any baggies, scales, or other
items used in sales or transactions involving drugs; that Hillman was arrested
in an area known for drug sales; that Hillman had any weapons in the car;
or that Hillman tried to evade the police.”  Id. at *10-11.