BARRON, Circuit Judge, dissenting.
*107 Once again, we confront a challenge to the application of a federal sentencing enhancement to a defendant's prior state law conviction. Once again, we must try to divine whether the conviction triggers the enhancement. We have confronted this issue many times in the context of crimes of violence. We do so here in the context of a drug offense: trafficking cocaine base in violation of Maine law. See Me. Stat. tit. 17-A, §§ 1101(17), 1103(1-A).
The government contends that, because Noor Mohamed was convicted of the prong of this offense that requires proof of possession of cocaine base with an intent to "sell, barter, trade, exchange or otherwise furnish [it] for consideration," see id. § 1101(17)(C)-(D), he is subject to a sentencing enhancement under the United States Sentencing Guidelines, U.S.S.G. § 2K2.1(a). That enhancement is triggered by a conviction for a "controlled substance offense," id., which the Guidelines elsewhere define, in relevant part, to be only an offense that prohibits the "possession of a controlled substance ... with intent to manufacture, import, export, distribute or dispense," id. § 4B1.2(b).
Under prevailing precedent, we must use the so-called "categorical approach" to determine whether Mohamed's conviction for his Maine drug trafficking offense triggers this enhancement. See United States v. Dávila-Félix, 667 F.3d 47, 55 (1st Cir. 2011) (applying the categorical approach to federal Sentencing Guidelines); Maj. Op. 101. Thus, only if the least of the conduct that this Maine offense criminalizes would itself qualify as a "controlled substance offense" under § 2K2.1(a) may a court apply this federal sentencing enhancement to Mohamed. See Moncrieffe v. Holder, 569 U.S. 184, 190-91, 133 S.Ct. 1678, 185 L.Ed.2d 727 (2013) ("[W]e must presume that the conviction 'rested upon nothing more than the least of the acts' criminalized, and then determine whether even those acts are encompassed by the generic federal offense." (quoting Johnson v. United States, 559 U.S. 133, 137, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010) (alterations omitted)); see also Dávila-Félix, 667 F.3d at 55-56 ).
Maine law permits a jury to draw an inference of the distributive intent that is required under Me. Stat. tit. 17-A, § 1101(17)(D) based on the mere possession of a relatively small amount of a mixture that contains even a speck of cocaine base. See id. § 1103(3); id. § 1101(25)(B) (defining "cocaine" to mean a "mixture" including "any quantity of" "cocaine" or "cocaine base"); State v. McLaughlin, 189 A.3d 262, 268 (Me. 2018) (construing "cocaine base" to mean a mixture including "any quantity of cocaine base" for purposes of Maine's drug trafficking statute, including for various quantitative thresholds in that statute). Thus, that minimal possessory conduct is the least of the conduct that the Maine offense at issue criminalizes.
In my view, the federal government has not met its burden, Dávila-Félix, 667 F.3d at 55, to show that such minimal possessory conduct manifests the "intent to manufacture, import, export, distribute or dispense" that is necessary to trigger the application of the Guidelines enhancement for having a prior conviction for a "controlled substance offense." U.S.S.G. §§ 2K2.1(a), 4B1.2(b). Accordingly, I conclude, like the District Court, but unlike my colleagues, that the enhancement does not apply here.
In arguing otherwise, the federal government first contends that the Maine trafficking offense for which Mohamed was convicted necessarily triggers the federal sentencing enhancement, because that Maine offense itself contains a distributive *108 intent element. Our precedent makes clear, however, that, under the categorical approach, we must inquire into how loosely Maine defines that element. Only by doing so can we ensure that the offense criminalizes no more conduct than the federal sentencing enhancement's triggering offense. See United States v. Mulkern, 854 F.3d 87, 96 (1st Cir. 2017) (rejecting the government's argument that an offense involved possession with intent to distribute because the state legislature "designates the copped-to crime as 'trafficking' ").
The government separately attempts to meet its burden to show that the Maine offense does not sweep too broadly to trigger the enhancement by reference to materials that show the type of evidence that suffices to prove the distributive intent element of 21 U.S.C. § 841(a)(1), a federal drug crime. The government suggests that these materials are relevant for present purposes because the Guidelines' definition of a "controlled substance offense" necessarily encompasses conduct that suffices to satisfy the distributive intent element of that federal drug crime.[13]
The materials to which the government refers do not, however, help its cause. They include references to precedents in which courts determined that the possession of more than four grams of cocaine base did not, on its own, suffice to prove such distributive intent. See United States v. Nealy, 221 F. App'x 329, 333 (5th Cir. 2007) (per curiam) (unpublished) (explaining that, under 21 U.S.C. § 841(a)(1), testimony presented by the government showed that while 5.01 grams of cocaine base "suggested drug dealing," it also "indicated that this quantity is not clearly inconsistent with personal use" and thus "additional evidence [was] necessary to show intent to distribute" (emphasis added)); United States v. Hunt, 129 F.3d 739, 742 (5th Cir. 1997) (holding that, under 21 U.S.C. § 841(a)(1), possession of 7.998 grams of cocaine base alone was insufficient to prove intent to distribute beyond a reasonable doubt because it was "consistent with personal use"). Nor does the government identify a single case that indicates that -- as Maine's drug trafficking offense allows -- the mere possession of a mixture that contains a speck of cocaine base may, on its own, suffice to prove the requisite distributive intent under 21 U.S.C. § 841(a)(1).
The federal government does direct our attention to the drug quantity tables that are set forth in the Sentencing Guidelines and to sentencing data from each of the circuits that shows the "Base Offense Levels for Drug Trafficking in Each Drug Type." But, the tables purport only to relate to the calculation of the Guidelines sentencing range for a person convicted of a federal drug crime. See U.S.S.G. § 2D1.1(c). They thus give no insight into the least of the conduct criminalized by those federal drug crimes. The sentencing data does identify the conduct of defendants convicted of federal drug crimes, but that data, too, does not purport to give insight into the key issue that, under the *109 categorical approach, we must resolve: whether possession of a four-gram substance containing cocaine base in and of itself can suffice to establish an "intent to manufacture, import, export, distribute or dispense" within the meaning of the Guideline's definition of a "controlled substance offense." See U.S.S.G §§ 2K2.1(a), 4B1.2(b).
The majority, for its part, points to one of the § 841(a) cases on which the government relies -- United States v. Moore, 481 F.3d 1113 (8th Cir. 2007) -- to contend that the government has met its burden to show that the Guidelines enhancement encompasses even possessory conduct of the minimal sort that the Maine trafficking offense at issue here criminalizes. Maj. Op. 106. But, that case did not involve a sufficiency challenge -- let alone one that directly addresses the type of possessory conduct that, in and of itself, might suffice to prove distributive intent under 21 U.S.C. § 841(a)(1). Thus, that case cannot demonstrate what it must for the government to be able to prevail on its § 841 -based argument under the categorical approach.
I close by making two additional observations.
The first concerns how we apply the categorical approach. The majority emphasizes -- repeatedly -- that the Shepard documents, see Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), reveal that prosecutors did not need to, and in fact did not, rely on the permissible inference to secure Mohamed's conviction for the trafficking offense. See Maj. Op. 102-04.
If the majority emphasizes this point merely to shore up the uncontested fact that Mohamed was convicted of the portion of the Maine trafficking offense to which the permissible inference provision -- rather than the irrebuttable presumption provision at issue in Mulkern, 854 F.3d at 96 -- applies, then I have no quarrel. Maj. Op. 102-03 n. 7. But, the majority appears to suggest that the Shepard documents are also relevant to our analysis because they show that Mohamed was convicted of his trafficking offense based on conduct that was more severe than the least of the conduct that this offense criminalizes. See Maj. Op. 103-04, 104-05. If so, it seems to me that the majority is engaging in precisely the kind of inquiry into the "brute facts" of Mohamed's means of committing the offense that the categorical approach makes irrelevant. See Mathis v. United States, --- U.S. ----, 136 S.Ct. 2243, 2251, 195 L.Ed.2d 604 (2016).
After all, the permissible inference provision does not establish an element of the offense for which, all parties agree, Mohamed was convicted. See id. at 2248 ("[Elements] are what the defendant necessarily admits when he pleads guilty[.]"). The permissible inference provision merely sets forth a method for proving the conduct that could satisfy an element of that offense -- namely, the one that concerns Mohamed's distributive intent. See Me. Stat. tit. 17-A, § 1103(3).
The second observation concerns the sense in applying the categorical approach at all. My colleagues agree that, just as our precedent instructs, the categorical approach does apply here. Maj. Op. 101. That point, therefore, is not at issue in this appeal.
I am aware, though, that the categorical approach has received its fair share of criticism for the counter-intuitive results that it often yields. See United States v. Faust, 853 F.3d 39, 61 (1st Cir. 2017) (Lynch, J., concurring) (collecting statements). I am aware, as well, that an outcome like the one that I am convinced that we must reach here -- in which we would *110 deem a drug "trafficking" offense not to constitute a "controlled substance offense" -- might well add to that criticism. I thus think it important to explain both that I do not share the oft-expressed concern that the categorical approach is too counter-intuitive to have been contemplated by those who drafted these enhancements, see id. at 61-66 (Barron, J., concurring), and that the outcome that I believe that approach requires in this case does not lead me to see new merit to that concern.
Sentencing enhancements are often written in terms that comfortably invite a categorical inquiry, see id. at 62-65, and that is certainly true of the one before us, see U.S.S.G. § 4B1.1(b). In my view, when enhancements are written in terms that invite such an inquiry, there is no reason to presume that their drafters could not have intended for judges to determine the scope of such enhancements by inquiring into the least of the conduct criminalized by the predicate offense.
I say that because the decision to restrict (even if not to eliminate) a sentencing judge's discretion to determine a sentence on an individualized basis -- as sentencing enhancements such as the one before us necessarily do -- is a consequential one. I thus see no reason to presume that the drafters of such enhancements made that type of decision in a manner that would define the class of persons subject to them on the basis of merely the name that a state gives to an offense or with no appreciation of the difficulty of ensuring, retrospectively, that a defendant had engaged in conduct more severe than the least of what the offense of his conviction criminalized. Rather, it seems to me entirely sensible to presume that, in choosing words that invite judges to use the categorical approach to define an enhancement's scope, the drafters of the enhancement chose to ensure that it would accord with principles of lenity, cf. United States v. Santos, 553 U.S. 507, 514, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008) ("The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them."), just as the categorical approach ensures. See Faust, 853 F.3d at 65 (Barron, J., concurring).
Consistent with these conclusions about the likely intent of the drafters of these enhancements, I note that, despite the criticism that the categorical approach has engendered, no changes have been made to this one by its drafters that would require us to use a different approach. That is no doubt in part because of the serious problems that inhere in the alternative means that have been suggested to define the scope of sentencing enhancements that are predicated on prior state offenses. See ids="12276892" index="117" url="https://cite.case.law/f3d/853/39/#p61">id. at 61-66.
Thus, I wish to emphasize that the result that I would reach here demonstrates to me the sense that inheres in the categorical approach -- insofar as there is any sense in establishing such enhancements -- rather than the merit of the critiques that have been lodged against it. For, I can see no good reason to conclude that the drafters of U.S.S.G. §§ 2K2.1(a)(2), 4B1.2(b), in establishing a sentencing enhancement for defendants who have been convicted of drug offenses that require proof of distributive intent, actually intended for it to a apply to a defendant convicted of a drug offense that -- though labeled as one for "trafficking" -- requires proof of nothing more than possessory conduct of a most minimal sort.
On this understanding, I respectfully dissent.

The government does not argue that the "intent to manufacture, import, export, distribute, or dispense" in the guidelines, U.S.S.G. § 4B1.2(b), may be defined by reference to some "generic" "controlled substance offense." See Taylor v. United States, 495 U.S. 575, 598, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) (defining burglary under the Armed Career Criminal Act by reference to "generic" burglary). In any event, the only attempt to compare Maine's statute to other states' trafficking laws of which I am aware is unhelpful to the government. Specifically, the Oliveira court surveyed the laws of several states and found the "dividing line between possession and trafficking" under Maine law to be "too low to be confident that Mr. Oliveira had the requisite distributive intent" to satisfy the Guidelines. United States v. Oliveira, 287 F.Supp.3d 97, 108 (D. Me. 2017).